IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANE SNOWBERGER,

    Plaintiff,

v.                                                                          Civ. No. 01-00683 RLP/DJS

THE EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY, d/b/a BETTY DARE
GOOD SAMARITAN CENTER, *et al.*,

    Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on two motions for summary judgment filed by the Defendants. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 *et seq.* and alleges jurisdiction over the federal claims under 28 U.S.C. §1331 and § 1343(a)(4) and supplemental jurisdiction over her state law claims by virtue of 28 U.S.C. § 1367(a). For the reasons set forth below, the court grants the Defendants' motions.

Plaintiff Jane Snowberger applied for the position of Director of Nursing Services at the Betty Dare Good Samaritan Center (the "Center") and was hired by Jon Kosiak, who is not a party to this lawsuit. According to Snowberger, she was told by Mr. Kosiak that the Center had substantial problems with regard to staffing, quality control, and low morale. Snowberger alleges that Mr. Kosiak advised her to keep documentation and to follow the Employee Handbook in personnel matters.

In May, 1998, the State of New Mexico performed a survey of the operations at the Center and found the Center was not in compliance with various regulatory standards in staffing levels, wound care, and patient documentation. In July, 1998, Snowberger

attended a meeting with various State and Center representatives, including Defendants Carson, Hanson and Greenquist. During the meeting several problems at the Center were discussed and shortly thereafter Snowberger was relieved of her duties as Director of Nursing Services. She was offered alternative employment, which she declined.

Snowberger's lawsuit alleges Breach of Implied Contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), Promissory Estoppel (Count III), Negligent or Intentional Misrepresentation (Count IV), Retaliatory Discharge (Count V), Interference with Contractual Relations (Count VI), and Violation of the First Amendment (Count VII). Counts I, II, III, IV, and V are against the Center only; Count VI is against Hanson only; and Count VII is against all defendants. Defendants Center and its employees Hanson and Greenquist have filed a motion for summary judgment for the counts against them; Defendant Carson, who is an employee of the State of New Mexico, has filed a separate motion for summary judgment for the claims against her.

In ruling on a summary judgment motion, it is the task of the district court to determine if the party bearing the burden of proof on an issue at trial has presented sufficient evidence to raise a genuine issue of material fact as identified by the substantive law to warrant sending the issue to the factfinder. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986); Fed.R.Civ.P. 56. Only material factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant. *Anderson*, 477 U.S. at 248. With these standards in mind, the court will address Snowberger's claims.

A. <u>Claims solely against the Center</u>

In New Mexico,

> [e]mployment without a definite term is presumed to be at will. In an at-will employment relationship, both the employer and employee have the right to terminate the employment at any time and for any reason. Our courts have recognized two exceptions to the at-will employment rule: (1) wrongful termination under facts disclosing unlawful retaliatory discharge or (2) where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge. The parties may modify the at-will presumption by a contractual agreement regarding termination. A representation in an employee handbook or personnel policies may contractually modify the at-will presumption. To create contractual rights, however, the terms of the representation must be sufficiently explicit to create a reasonable expectation of an implied contract.

*Trujillo v. Northern Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 341 (N.M. 2002) (citations and internal quotation marks omitted).

Snowberger alleges both exceptions to the at-will rule – retaliatory discharge and implied contract – and also breach of the implied covenant of good faith and fair dealing. We discuss each of these in reverse order. First, the breach of the implied covenant of good faith and fair dealing is not recognized in at-will employment agreements. *Kropinak v. ARA Health Services, Inc.*, 33 P.3d 679, 682 (Ct. App. N.M. 2001). This is true even when retaliatory discharge is alleged. *Id.*

Second, there is nothing in the Employee Handbook of the Center which would alter the at-will status of Snowberger's employment. It provides in pertinent part:

> This Handbook is not a contract guaranteeing employment with this facility for any specific duration.
>
> . . .

3

> Either you or the facility may terminate this employment relationship at any time, for any reason, with or without notice. No supervisor or representative of the Society, other than the Chief Executive Officer, has the authority to enter into any agreement with you for employment for any specified period, or to make any promises or commitments contrary to the foregoing. Further, any employment agreement entered into by the Chief Executive Officer shall not be enforceable unless it is in writing.

*See* Index of Evidence [Doc. 37], Attachment A to Affidavit of Don Hanson, Exhibit 3, Employee Handbook at vi ("Introduction").

With regard to disciplinary procedures, the Center has a step-by-step approach. *See id.* at 12. However, this section clearly warns that the Center "reserve[s] the right to bypass any step in this disciplinary procedure whenever it is believed that the seriousness or nature of the conduct, behavior, or performance in question warrants such bypass. *Id.*

The Center contends that Snowberger was hired as, and at all times remained, an at-will employee, which meant that either she or the Center could terminate the employment at any time with or without cause for the termination. Snowberger relies on *Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471-72 (Ct. App. N.M.), *cert. denied*, 890 P.2d 1321 (1995) to support her claims. In that case, the court held that there was sufficient evidence to survive summary judgment on the issue of whether the defendant's employment practices, coupled with a detailed disciplinary procedure, had created a reasonable expectation on the part of the employee that she would not be terminated without cause.

Snowberger asserts that Mr. Kosiak told her that as long as she followed the procedures set forth in the Employee Handbook she would be "fine." She took this to

4

mean that she could not be terminated without cause. However, nothing in the materials submitted by either party warrants this inference. For example, other than the Employee Handbook and her recollection of Mr. Kosiak's alleged remarks,[1] Snowberger provides the court with no information of the Center's policies with regard to termination or retention of its employees sufficient to support at least an inference that the Center's conduct created a *reasonable* expectation of continued employment. *Kiedrowski*, 893 P.2d at 471-72. Similarly, she provides no record evidence that the Center in all disciplinary matters exactly followed the procedures in the Employee Handbook as did the defendant in *Kiedrowski*. As noted above, the Center reserved the right to bypass the disciplinary procedures in certain situations. The facts of this case indicate that the Center was not passing regulatory muster with the State and was concerned about Snowberger's ability to handle the Director of Nursing Services position. She was offered alternative work at the Center, which she declined, and was thereafter terminated. The record evidence does not support an inference, much less a finding, that the Employee Handbook, or the conduct of Center personnel, would support an implied contract of employment.

Snowberger alleges that her discharge was in retaliation for protected activity, thus meeting the second exception to the at-will employee rule. *See Trujillo*, *supra*. "'[A]n at-will employee may recover in tort when his discharge contravenes a clear mandate of public policy.'" *Lihosit v. I & W, Inc.*, 913 P.2d 262, 264 (N.M. Ct. App.) (quoting *Gutierrez*

---

[1] There is no affidavit from Mr. Kosiak; the information comes solely from Snowberger's own deposition testimony.

5

*v. Sundance Indian Jewelry, Inc.*, 868 P.2d 1266 (Ct. App. N.M. 1993), *cert. denied*, 869 P.2d 820 (1994)), *cert. denied*, 913 P.2d 251 (1996). "Following generally recognized tort principles, an employee seeking to recover for retaliatory discharge must show a causal connection between his protected actions and his discharge." *Id.* (citing *Shovelin v. Central N.M. Elec. Coop.*, 850 P.2d 996, 1006 (1993)).

As the court understands Snowberger's argument, it was during the July, 1998, follow-up meeting with Center and State personnel that the impetus for her discharge arose. Snowberger claims that during a discussion of a patient's care, Defendant Carson suggested that Snowberger, as Director of Nursing Services should have overridden a physician's orders with regard to that patient's care. Snowberger states that she advised Carson that she had no authority to override a physician's orders and that to do so would put her nursing license in jeopardy.

This confrontation, as related by Snowberger, does not meet the criteria of retaliatory discharge. First, protection of Snowberger's own nursing license is not a matter of public policy. *See Garrity v. Overland Sheepskin Co. of Taos*, 917 P.2d 1382, 1386 (N.M. 1996) (employees must show their activities furthered the public interest not merely a private one). Second, there is no causal connection that the court can discern between this conversation and Snowberger's termination. Indeed, in reviewing the record submitted by the parties, it appears that concerns were raised about Snowberger's failure to inquire about a physician's orders that resulted in substandard care for the patient. Rather than ordering Snowberger to countermand a physician's orders, she was being quizzed as to why she did not take steps to ensure the patient's care. The scenario given does not raise

any public policy concerns in favor of Snowberger and against the Center, it does not meet the criteria for retaliatory discharge, and therefore does not constitute an exception to the at-will employment.

Snowberger's next claim against the Center is for promissory estoppel. The essential elements of promissory estoppel are:

> (1) An actual promise must have been made which in fact induced the promisee's action for forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Production Co. v. Mercury Exploration Co.*, 916 P.2d 822, 828 (N.M. 1996).

As evidence for this claim, Snowberger alleges that she was promised continued employment if she followed the Employee Handbook and that she took the position of Director of Nursing Services in reliance on this promise. As indicated above, the court finds there was no such promise of continued employment. In any event, the court agrees with the analysis in *Salazar v. Furr's*, 629 F. Supp. 1403 (D.N.M. 1986): to allow promissory or equitable estoppel in employment cases such as this one would "vastly alter" the at will employment doctrine. *Id.* at 1410. New Mexico courts have only recognized two exceptions to this rule and promissory estoppel is not one of those exceptions. This claim is without merit.

In her final claim solely against the Center, Snowberger alleges negligent or intentional misrepresentation. This claim is based on the same set of alleged facts: she

7

was told that if she followed the Employee Handbook she would not be terminated without cause. New Mexico courts have not addressed whether negligent misrepresentation should be applied in an employment context such as this one. But, as with promissory estoppel, negligent misrepresentation is not one of the two exceptions to the employment at will rule. *See, e.g., Trujillo,* 41 P.3d at 341. In any event, the elements of that cause of action would not be applicable to this case.

The elements of negligent misrepresentation are (1) a false representation of fact; (2) the defendant failed to exercise ordinary care in communicating the information conveyed; (3) the defendant should have reasonably foreseen that the plaintiff would have been harmed by the incorrect information; and (4) the plaintiff justifiably relied on the information. N.M.U.J.I. Civ. 13-1632. Leaving aside the question of whether there was a duty on the part of the Center to a prospective employee, there were no false representations of fact; Mr. Kosiak's alleged comments are too vague to be considered as such. Further, Snowberger's alleged reliance on such a statement is unjustifiable given the language in the Employee Handbook, which is at odds with her interpretation of Kosiaks' statements. This claim is without merit.

B. <u>Claims solely against Hanson</u>

In Count VI of her Complaint, Snowberger alleges that Don Hanson interfered with her contractual relations with the Center. She assumes she had a valid contract with the Center and that Hanson fired her despite this contract. Because the court has found that Snowberger was an at will employee and that there was no explicit or implied contract of employment, this claim necessarily fails.

C.  Claims against all Defendants

Snowberger alleges as the basis of her § 1983 claim that the defendants conspired to terminate her employment in violation of the First Amendment. Defendant Carson is an employee of the State of New Mexico and is sued in her individual capacity. Snowberger alleges that her statements concerning a nurse's inability to override a physician's orders constitute protected speech and that after this statement Carson and the other Defendants had an agreement to terminate Snowberger. The Center defendants seek summary judgment on this claim and Carson has filed her own motion for summary judgment on this claim.

"To state a cause of action under 42 U.S.C. § 1983 for an alleged violation of the Fourteenth Amendment and provisions of the Bill of Rights incorporated into the Fourteenth Amendment, the challenged conduct must constitute state action." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). Further, "the only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 594-5 (10th Cir. 1999) (internal quotation marks, bracket, and citation omitted); *see Sigmon v. Community Care HMO,Inc.*, 234 F.3d 1121 (10th Cir. 2000). Assuming, *arguendo,* that Snowberger has met the requirement of state action by state actors by alleging a conspiracy between Carson (a state employee) and the other Defendants (ostensibly private actors), the court finds that her § 1983 claim must fail on substantive grounds.

9

The threshold question in First Amendment cases is whether the speech at issue warrants constitutional protection. *Koch v. City of Hutchinson*, 847 F.2d 1436, 1440 (10th Cir.), *cert. denied*, 488 U.S. 906 (1988). "If the court determines that the speech at issue was not protected, the defendant is entitled to judgment as a matter of law." *Craven v. University of Colorado Hospital Authority*, 260 F.3d 1218, 1222 (10th Cir. 2001), *cert. denied*, -- U.S. --, 122 S.Ct. 1296 (2002). Speech is only protected if it is on a matter of public concern, *i.e*, if it relates on a topic of political, social, or other concern to the community. *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989). In analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker: "whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Wilson v. City of Littleton*, 732 F.2d 765, 768-69 (10th Cir. 1984). *See McEvoy*, 882 F.2d at 466 ("Was the employee's point to bring wrongdoing to light or to raise other issues of public concern because they are of public concern, or was the point to further some purely private interest?") (citing *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987)).

Snowberger's statement that she could not override a physician's orders and that to do so would put *her* license in jeopardy is not a matter of public concern. Nowhere in the submissions of the parties is even the inference that Carson and the Center defendants were, for example, seeking to circumvent state regulations regarding patient care or to turn over physicians' care of the Center patients to the nursing staff. In short, Snowberger's concern about her own nursing license is insufficient to meet the threshold First Amendment test that protected speech covers matters of public concern.

10

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants The Betty Dare Center's, Pat Greenquist's, and Dan Hanson's Motion for Summary Judgment [Doc. 34] is granted; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant Sandra Carson's Motion for Summary Judgment [Doc.43] is granted.

IT IS SO ORDERED.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

For the Plaintiff: Donald Sears, Jr., Esq.

For the Defendants: Christopher E. Hoyme, Esq.
Lisa Mann, Esq.
Susan Weckesser, Esq.